FILED
2016 Feb-23  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TERESAMINGO M. GAMBLE, </br></br>　　　　　　Plaintiff </br></br>vs. </br></br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, </br></br>　　　　　　Defendant | ) </br> ) </br> ) </br> ) </br> ) </br> )   Case No.  5:14-cv-00846-HGD </br> ) </br> ) </br> ) </br> ) </br> ) |

## REPORT AND RECOMMENDATION

Plaintiff, Teresamingo M. Gamble, commenced this action on May 6, 2014, pursuant to 42 U.S.C. § 405(g).  She seeks judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge (ALJ), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

**I.    ALJ Decision**

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  "Substantial

work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the

fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Plaintiff was represented by counsel who withdrew from representation shortly before the scheduled hearing before the ALJ. On the date of the hearing, the ALJ strongly advised plaintiff to obtain new counsel and advised her that she would postpone the hearing in order for plaintiff to obtain a new lawyer. Despite being advised repeatedly that she needed to have an attorney to represent her in this matter, plaintiff refused to obtain counsel and insisted that the hearing go ahead as scheduled. (Tr. 39-44). Consequently, a hearing was held before the ALJ on March 5, 2013. Plaintiff was *pro se.* (Tr. 39-69).

Plaintiff alleged disability due to degenerative disc disease, osteoporosis, level three prolapse of pelvic organs, fibromyalgia, obesity, prior melanoma on arm, post-traumatic stress disorder (PTSD), vision problems, and hypertension. (Tr. 225).

The ALJ found, after consideration of the entire record, that plaintiff had engaged in substantial gainful activity (SGA) for the entirety of 2011, and that the period between the alleged onset date of August 3, 2010, and January 1, 2011, did not constitute a continuous 12-month period. (Tr. 18-20). However, the ALJ further found that there had been a continuous 12-month period during which plaintiff did not engage in SGA after January 1, 2012. (Tr. 20). The ALJ's findings addressed this time period which ran from January 1, 2012, through the date of his decision. (Tr. 20).

According to the ALJ, plaintiff suffers from the severe impairments of rectocele and hernias status post-repair surgery, morbid obesity, degenerative disc disease (DDD) of the lumbar spine, and affective disorder. (Tr. 20-25). Plaintiff also suffers from other impairments, including spinal stenosis, scoliosis, prior melanoma on the left forearm, rash on her head with reported hair loss, hypertension (HTN), ovarian cysts, diverticulosis, fibromyalgia, impaired vision and PTSD, but those impairments were not "severe," as that term is defined by Social Security regulations, because they did not cause any significant limitations in plaintiff's ability to perform work-related activities. (Tr. 21-25). *See* 20 C.F.R. § 404.1520(c) (defining a "severe" impairment as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities").

Despite the presence of severe impairments, plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and she retained the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she can only occasionally balance, kneel, crouch, and climb ramps and stairs. Further, she cannot climb ropes, ladders or scaffolds, stoop or crawl. She requires the ability to sit or stand for one or two minutes every hour or so and cannot work around dangerous moving machinery or at unprotected heights. (Tr. 27). The ALJ then relied upon vocational expert (VE) testimony to determine that a person of plaintiff's age, education, work experience, and residual functional capacity would not be able to perform plaintiff's past relevant work. (Tr. 31). However, based on this testimony, the ALJ also found that there remained a significant number of jobs in the national economy that plaintiff could perform, including cashier, assembler, and surveillance system monitor. (Tr. 32). Accordingly, the ALJ found that plaintiff has not been under a disability, as defined by the Social Security Act, from January 1, 2012, through May 3, 2013. (Tr. 32).

## II.  Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d

835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Discussion

Substantial evidence supports the Commissioner's decision that plaintiff was not disabled. With regard to plaintiff's onset date, plaintiff testified at the hearing that she stopped working in August 2011, but the ALJ credited her statement to John Haney, Ph.D., that she worked through December 2011 because she made that statement closer to the period worked, when her memory would have been fresher. (Tr. 20, 47, 334). Therefore, the ALJ reasonably found that plaintiff performed SGA for the entirety of 2011 and so was not disabled for that period. Likewise, plaintiff could not have met the standard for disability between the onset date of August 3, 2010, and January 1, 2011, because it was not a continuous period of 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509, 416.905(a), 416.909; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (holding that a claimant's impairments and inability to work must last for a continuous period of at least 12 months). Substantial evidence thus supports the ALJ's decision that plaintiff was not disabled prior to January 1, 2012.

Evidence also does not support plaintiff's claim of disabling limitations after January 1, 2012. Plaintiff claims disability due to "rectocele and hernias status post-repair surgery." Dr. Mitchell Schuster diagnosed plaintiff with a vaginal prolapse in March 2011, while she was still engaged in SGA. (Tr. 313). On March 29, 2011, Dr.

Schuster admitted plaintiff to Decatur General Hospital to surgically correct her prolapse. (Tr. 315-16).

On April 20, 2011, after her surgery, plaintiff told Dr. Ivan Pirovarov that she was "feeling generally well" and had no bleeding problems. (Tr. 349). On May 6, 2011, plaintiff reported feeling weak but had no bleeding problems. (Tr. 348). On November 9, 2011, plaintiff had an x-ray which revealed no abnormality other than constipation, for which the doctor recommended plaintiff take milk of magnesia. (Tr. 324). Plaintiff saw Dr. Pivovarov on November 17, 2011, complaining that her blood pressure was unstable and that she had body aches. However, she made no mention of abdominal pain and reported no bleeding. (Tr. 347).

In March 2012, plaintiff complained to Dr. Pivovarov of urinary incontinence and "widespread" muscle pain, mostly in her upper and lower back. (Tr. 345). However, Dr. Pivovarov could not identify any cause for the alleged pain. Plaintiff reported no bleeding. (Tr. 345).

On August 1, 2012, plaintiff saw Dr. Vernon Pegram complaining of abdominal pain, which she claimed was from ovarian cysts. However, he noted no acute pain. (Tr. 384). On September 4, 2012, Dr. Pegram assessed plaintiff with pelvic pain and a pelvic mass on the vaginal cuff. He arranged for plaintiff to have a CT scan for further evaluation. (Tr. 382). On September 27, 2012, Dr. Pegram

noted that the CT scan did not reveal any significant findings for plaintiff's pelvic pain and no obvious source for her pain. (Tr. 380). However, it was noted that she did have some constipation. (Tr. 380).

In December 2012, CT scans of plaintiff's abdomen and pelvis revealed a "slight enlargement in pelvic fluid collection," but that the CT otherwise indicated plaintiff's abdomen and pelvis were stable. (Tr. 401). In January 2013, Dr. Pegram assessed plaintiff's fluid retention as possibly related to diverticulosis. (Tr. 374).

A review of the above-referenced medical records reflects that plaintiff's problems related to her rectocele and hernias status post-repair surgery offer no evidence for plaintiff's alleged "bleeding complications," and her treating physician repeatedly noted that she was not having any issues with bleeding. The records reflect that plaintiff recovered quickly after her prolapse surgery and that there is no medical basis for her allegedly disabling abdominal pain beyond that caused by her constipation and some fluid retention. (Tr. 324, 380, 401).

The record evidence also shows that plaintiff's back problems and DDD were also mild. Dr. Mitchell Schuster repeatedly noted that plaintiff had a normal gait when she appeared for treatment in 2011. (Tr. 312, 321, 424). Dr. Pivovarov also noted that her gait was normal in 2010 and 2011. (Tr. 349, 350, 356, 357, 358, 451, 452, 459, 460, and 461).

In February 2012, Dr. Marlin Gill conducted a consultative examination that included an examination of plaintiff's back. (Tr. 330-32). Plaintiff claimed that she hurt her back when she fell off a six-foot ladder while working at Wal-Mart in 2009. (Tr. 330). She reported that she did not have a doctor treating her back problem and was not prescribed any medication for it. (Tr. 330). Upon examination, Dr. Gill found that plaintiff's gait was normal and that she could walk without any assistive devices. (Tr. 331). She demonstrated a good range of motion in the joints of her shoulders and elbows, although she complained of pain with movement. (Tr. 331). The strength in her arms and in her grip were both 4/5. Likewise, her leg strength was also an almost-normal 4/5. (Tr. 331). Dr. Gill's assessment was that plaintiff suffered from generalized back pain with no diagnosis as to its cause. (Tr. 332).

In November 2012, plaintiff received a $30,000 settlement from Wal-Mart in compensation for her alleged back injury. (Tr. 42, 43-44). However, the ALJ notes that the record reflects no evidence that plaintiff received any treatment for her alleged back injury during her period of eligibility despite the financial ability to do so. (Tr. 29). Failure to seek treatment provides substantial evidence that her back pain was not of disabling severity on or after her onset date. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); SSR 96-7p, 1996 WL 374186 (S.S.A.); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984).

Plaintiff also has failed to demonstrate that her affective disorder is disabling. Plaintiff received a consultative examination by Dr. John Haney, Ph.D., on March 26, 2012. While he observed that she seemed sad, her conversation was logical and goal-directed. (Tr. 334). He found that plaintiff had intact memory and low-average intelligence. (Tr. 334). Although plaintiff claimed that she was unable to perform basic arithmetic and change-making, the ALJ noted that this is contradicted by her daily activities, and in particular with her mother's functional statement that plaintiff could count change and pay bills. (Tr. 30, 238, 334). Plaintiff denied mental problems other than depression. (Tr. 335).

Dr. Haney diagnosed plaintiff with moderate, recurrent major depressive disorder and "pain disorder associated with both general medical and psychological factors." (Tr. 335). He opined that plaintiff's "ability to function in most jobs appeared to moderately to severely impaired due to physical and emotional limitations." (Tr. 335). The ALJ noted that plaintiff told Dr. Haney that she had poor memory and concentration, sadness, low energy, social withdrawal and variable sleep; however, she never reported these symptoms to her other doctors. The ALJ gave Dr. Haney's opinion little weight because Dr. Haney did not opine that plaintiff's mental limitations alone were disabling, and he was not a medical doctor, and therefore not qualified to assess her physical limitations. (Tr. 30). The ALJ also

noted that, despite her claims of mental problems, plaintiff never sought mental health treatment during the relevant period, either before or after her examination by Dr. Haney. (Tr. 30). This undermines her allegations of disabling mental limitations. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); SSR 96-7p, 1996 WL 374186; *Watson*, 738 F.2d at 1173.

Plaintiff also was diagnosed with morbid obesity by Dr. Pivovarov in 2012 (Tr. 346), which was found by the ALJ to be a severe impairment. The ALJ properly evaluated plaintiff's obesity in accordance with SSR 02-1p, 2002 WL 34686281,[1] and found that she remained capable of light work. (Tr. 26, 27). According to the ALJ, "clinical medical findings in the evidence of record reflects that even with the presence of obesity, there is no evidence that these alleged impairments result in severe limitations in her ability to perform work-related activities." (Tr. 26). The ALJ noted that the plaintiff's mother stated in her Function Report that plaintiff

---

[1] Policy Interpretation Ruling, Titles II and XVI: Evaluation of Obesity, SSR 02-1p was issued September 12, 2002, to provide guidance on the SSA policy concerning the evaluation of obesity in disability claims filed under Titles II and XVI of the Social Security Act. Although Listing 9.09 (Obesity) was deleted from the Listings effective October 25, 1999, changes were made to the Listings to ensure obesity was still addressed. Paragraphs were added providing guidance about the potential effects obesity has in causing or contributing to impairments in the musculoskeletal, respiratory, and cardiovascular body systems. The policy interpretation defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat." The Ruling recognizes obesity can cause limitations in all exertional and postural functions. It recognizes that obesity makes it harder for the chest and lungs to expand. Obesity forces the respiratory system to work harder to provide oxygen to the body, in turn making the heart work harder to pump blood and carry oxygen to the body. The Ruling recognizes obesity can increase the severity of coexisting or related impairments, including musculoskeletal disorders.

independently managed her own household, prepared meals, shopped, took medications, cared for her personal needs, handled her finances and attended church. (Tr. 29). Plaintiff failed to show that the evidence established that her obesity, alone or in conjunction with her other impairments, actually imposed additional limitations on her ability to work, and the mere diagnosis of obesity does not show that she had additional work-related limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Therefore, substantial evidence supports the ALJ's decision that plaintiff was not disabled.

Plaintiff submitted six new exhibits to the district court. *See* Docs. 28-1 through 28-6. This evidence is considered only to determine whether a remand is warranted under sentence six of 42 U.S.C. § 405(g). *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986). Sentence six of 42 U.S.C. § 405(g), the judicial review provision regarding the Commissioner's decision, provides that the district court may remand the case to the Commissioner for "additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994) (court may remand to Secretary if new evidence is

material and good cause exists for failure to incorporate the evidence in the record during proceedings before the ALJ).

In the instant case, the additional evidence submitted to the court is not material because it could not reasonably have been expected to change the ALJ's decision. *See Keeton*, 21 F3d. at 1068. There are only two exhibits that pertain to the relevant time period covered by the ALJ's decision, and they are cumulative of evidence already in the record. Document 28-1 related to plaintiff's March 2011 prolapse surgery. There is already extensive evidence in the record concerning this surgery, and this document adds nothing new. Document 28-6 provides a list of plaintiff's medications without further elaboration or commentary. The record already contains the list of medications that she was taking during the relevant time period. (Tr. 284-89). Therefore, this evidence is also cumulative.

The other documents, Documents 28-2 through 28-5, date from June 2013 through January 2015. The additional evidence may show a worsening of the plaintiff's condition after the ALJ's decision, but this is not relevant to the time period of the ALJ's decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999).

The ALJ's residual functional capacity finding also was supported by substantial evidence. The ALJ properly considered claimant's subjective complaints

of pain. To demonstrate that pain or other subjective symptoms render her disabled, a claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony on pain,"[s]he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007,1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986), and *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ properly applied this standard. The ALJ found that claimant's medically determinable impairments could be reasonably expected to cause the symptoms she alleged, but nonetheless concluded that claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with a residual functional capacity to perform light work with postural limitations. The ALJ carefully, and with great detail, articulated the basis for her credibility finding. (*See* Tr. 27-30). The court has reviewed and cited much of those extensive findings here. It will suffice to say that

the ALJ's residual functional capacity finding was supported by substantial evidence of record.

## IV. Conclusion

In conclusion, the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Plaintiff suffers from multiple medical conditions, but there is no substantial evidence that any of her conditions, or a combination of all of them, resulted in disabling impairments during the relevant time period. Therefore, it is **RECOMMENDED** that the decision of Commissioner finding that plaintiff is not disabled be **AFFIRMED**.

### NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.** Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982) (*en banc*), *overruled by Douglass v. United Service Auto Ass'n*, 79 F.3d 1415

(5th Cir. 1996) (*en banc*), *superseded by statute* Federal Magistrates Act, Pub.L. No. 111-16, 123 Stat. 1608 (codified as amended at 28 U.S.C. § 636(b)(1) (2009); *see Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 23rd day of February, 2016.

                                          HARWELL G. DAVIS, III
                               UNITED STATES MAGISTRATE JUDGE